UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Civil Action No.: _____

GEMINI INSURANCE COMPANY,
Plaintiff,

v.

BRANCH RIVER PLASTICS, INC., and
ARUNDEL VALLEY, LLC,
Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Parties, Jurisdiction and Venue

1. Plaintiff Gemini Insurance Company ("Gemini") is a Delaware insurance company authorized to write insurance in this state.

2. Branch River Plastics, Inc., ("Branch River"), is a Rhode Island corporation with a principal place of business at 15 Thurber Boulevard, Smithfield, RI 02917.

3. Arundel Valley, LLC, ("Arundel Valley") is Maine Limited Liability Company with a principal place of business at 24 Dairy Lane, Arundel, Maine, 04046, and whose members are believed to be residents of the State of Maine.

4. This court may exercise jurisdiction over this case pursuant to 28 U.S.C. §2201 and 28 U.S.C. §1332, because there is an actual controversy between citizens of different states concerning the availability of insurance coverage for a judgment exceeding $1 million.

1

5. Venue is proper in this District pursuant to 28 U.S.C § 1391 because a substantial part of the events giving rise to the issues in dispute occurred in this judicial district, and because the District Court has personal jurisdiction over the parties as a result of their substantial contacts with the forum state.

## Facts Common to All Counts

6. Arundel Valley is the owner of certain real estate in Arundel, Maine.

7. Arundel Valley wished to build a barn style building on this land to house a dairy business to produce its "Kate's Homemade Butter" product (hereafter, the "Kate's Butter Building").

8. Arundel Valley hired Peachey Builders, Inc., to provide certain construction services in the construction of the Kate's Butter Building.

9. Peachey Builders entered into a contract with House & Sun, Inc., for the purchase of certain structural insulated panels ("SIPs") for use on the roof of the Kate's Butter Building.

10. House & Sun obtained the SIPs for the Kate's Butter Building from defendant Branch River.

11. Branch River was the manufacturer of the SIPs purchased by House & Sun for the roof of the Kate's Butter Building. (hereafter "the Branch River SIPs").

12. In or around the spring of 2012, Peachey Builders installed the Branch River SIPs on the roof of the Kate's Butter Building.

13. Shortly after installation, Arundel Valley determined that the Branch River SIPs were defective and not fit for their intended use, and requested that the Branch River SIPs be removed from the roof of the Kate's Butter Building.

14. The Branch River SIPs were in fact removed from the roof of the Kate's Butter Building.

15. Other SIPs manufactured by a different company were thereafter installed on the roof of the Kate's Butter Building and the construction was completed.

16. Arundel Valley sued Branch River, alleging that the Branch River SIPs were defective and not fit for use on the Kate's Butter Building. This lawsuit was captioned <u>Arundel Valley, LLC v. Peachey Builders, Inc., et al.</u> and was assigned Cumberland County Superior Court docket number BCD-CV-13-15. This lawsuit is hereinafter called "the Arundel Valley Lawsuit".

17. The claims against Branch River Plastics are set forth in Count 5 (negligence); Count 6 (tortious interference with a contract); Count 7 (negligent misrepresentation); Count 8 (intentional misrepresentation); Count 10 (unjust enrichment); Count 11 (breach of implied work and merchantability); Count 12 (breach of implied duty of fitness for a particular purpose).

18. In Count 5, plaintiffs alleged that Branch River and Robert Mayo negligently failed to provide licensed R-Control airflow SIPs for the project. In Count 6, plaintiffs allege that Branch River knowingly provided SIPs that were not R-Control SIPs thus interfering with Arundel Valley's contract with Peachey Builders. In Count 7, plaintiffs alleged that Branch River negligently represented that the R-Control SIPs which it provided were appropriate for this project. In Count 8, these misrepresentations were alleged to have been made intentionally. It is alleged in Count 10 that all defendants were unjustly enriched by these representations. Finally, in Count 11, plaintiffs alleged that Branch River breached the implied warranty of merchantability with respect to the quality of these materials and, in Count 12 breached the implied duty for a particular purpose with respect to these materials.

19. On November 5, 2014, the trial judge (Horton, J.) granted partial summary judgment to Branch River Plastics, dismissing all of these claims except the warranty claims set forth in Counts 11 and 12.

20. In dismissing plaintiff's tort claims on the basis of the economic loss doctrine, Judge Horton declared:

> Injecting negligence into what is fundamentally a breach of warranty case not involving any damage to person or property would be inappropriate, because it would displace predictable contractual and warranty liability defined in the course of the transaction in favor of tort liability determined after the fact. The world of contract depends in large part on predictability of rights and obligations, Clearly, when a product causes personal injury or property damage, the harm can legitimately be viewed as breach of a societal duty sounding in tort, as well as a breach of contractual and warranty duty, and tort remedies come into play, but when the product simply fails to perform as expected or guaranteed, there is no reason to depart from contractual and warranty remedies. This is essentially the basis for the *Peachtree* decision and the court is constrained to follow it.

21. Following the court's order, the only claims by Arundel Valley that remained against Branch River were claims for breach of the implied warranties of merchantability and fitness for a particular purpose.

22. These warranty claim were tried to a jury in June, 2015.

23. In answers to special questions, the jury found that Branch River violated both the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.

24. The jury returned a verdict against Branch River for $1,060,000.00

25. At the time of the events in question, Branch River Plastics was insured by Gemini Insurance under Policy Number VIGP013676 (hereafter "the Gemini Policy"). A true and accurate copy of the Gemini Policy is attached hereto as Exhibit 1.

26. The Gemini Policy provided, among other things, general liability insurance coverage to Branch River, subject to the declarations, terms, conditions, exclusions and limitations contained in the policy.

## Count I
### No "Accident" or "Occurrence"

27. Gemini re-alleges and incorporates herein all previous paragraphs as if fully set forth herein.

28. The insuring agreement of the Gemini policy states:

> **1. Insuring Agreement**
>   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
>   (1) The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and
>
>   (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
>   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**
>
>   **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>   (2) The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and
>
>   (3) A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under Section **V** — Extended Reporting Periods.

5

29. The Gemini policy defines an "occurrence" as:

> an accident, including continuous or repeated exposure to substantially the same general harmful conditions

30. Breach of the implied warranty of merchantability and/or breach of the implied warranty of fitness for a particular purpose are not "accidents" within the meaning of the policy's coverage.

31. The jury's verdict of $1,060,000 are not damages awarded on account of a claim covered by this policy.

## Count II

## No ""Property Damage"

32. In order to be covered by the Gemini Policy, an award of damages must be for either "bodily injury" or "property damage" suffered by the plaintiff.

33. The Gemini Policy defines "property damage" as follows:

> "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

34. Prior to their removal, the Branch River SIPs had not caused physical injury to tangible property or resulted in the loss of use thereof.

35. Accordingly, the jury's verdict of $1,060,000 are not damages awarded on account of a any "property damage" covered by this policy.

## Count III

### "Your Product" Exclusion

36. Gemini re-alleges and incorporates herein all previous paragraphs as if fully set forth herein.

37. The Gemini Policy provides that its insurance does not apply to:

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

38. The Gemini Policy defines "your product" as meaning:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

39. The Branch River SIPs were goods or products manufactured, sold, handled and distributed by Branch River.

40. The claims proved by Arundel Valley concerned damage to "Your product" within the meaning of the Gemini Policy.

41. Accordingly, the jury's verdict of $1,060,000 is excluded from coverage.

## Count IV

### "Damage To Impaired Property" Exclusion

42. Gemini re-alleges and incorporates herein all previous paragraphs as if fully set forth herein.

7

43.    Exclusion M to the Gemini Policy states that its insurance does not apply to:

> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

44.    The Gemini policy defines "impaired property" as:

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

45.    If the damages awarded to Arundel Valley in its lawsuit are wholly or in part compensation for a loss of use of the Kate's Butter Building, then any resulting coverage for "property damage" is negated by operation of this exclusion because any such loss of use resulted from a claimed defect or deficiency in the insured's product.

46.    If the damages awarded to Arundel Valley in its lawsuit are wholly or in part compensation for a loss of use of the Kate's Butter Building, then any resulting coverage for "property damage" is negated by operation of this exclusion because these breach of warranty claims are for the insured's failure to fulfill its contract or agreement with Arundel Valley.

## Count V

### Removal and Replacement Exclusion

47.   Gemini re-alleges and incorporates herein all previous paragraphs as if fully set forth herein.

48.   Exclusion N to the Gemini Policy provides that its insurance does not apply to :

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
>
> (1)   "Your product";
>
> (2)   "Your work"; or
>
> (3)   "Impaired property";
>
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

49.   The Gemini Policy defines "impaired property" as meaning:

> tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> a.   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b.   You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

50.   If the damages awarded to Arundel Valley in its lawsuit are wholly or in part compensation for a loss of use of the Kate's Butter Building, then any resulting coverage for "property damage" is negated by operation of this exclusion because any such loss of use resulted from a claimed defect or deficiency in the insured's product.

## Count VI

### Installation Exclusion

51. Endorsement VE 0180 07 03, which is a part of The Gemini policy, provides that:

> It is agreed that this policy does not apply to any "bodily injury" or "property damage" or "personal injury" arising out of or related to the installation by anyone of any product manufactured, sold or distributed by the named insured.

52. The claims proved by Arundel Valley in the warranty lawsuit arose out of or were related to the installation by Peachey Builders of the Branch River SIPs.

53. The Branch River SIPs were a product manufactured, sold or distributed by Branch River.

54. The claims proved by Arundel Valley in the warranty lawsuit are excluded by Endorsement VE 0180 07 03 of the Gemini policy.

### Count VII – Declaratory Judgment vs. Arundel Valley

55. Gemini re-alleges and incorporates herein all previous paragraphs as if fully set forth herein.

56. Arundel Valley was the prevailing plaintiff in the warranty lawsuit.

57. As the prevailing plaintiff in the warranty lawsuit, Arundel Valley has or may have a legal interest in the resolution of the issues raised in this declaratory judgment lawsuit.

58. Gemini may not be able to conclusively establish its rights and obligations under the Gemini policy (or lack thereof) unless Arundel Valley is a party to (and is bound by) this action.

59. Gemini is entitled to a declaratory judgment stating that Arundel Valley has no rights against Gemini and that Gemini has no obligations to Arundel Valley in matters concerning the warranty lawsuit.

## PRAYERS FOR RELIEF

WHEREFORE, Gemini Insurance Company requests that this Court:

a. enter judgment declaring that Gemini has no duty to indemnify Branch River Plastics, for the damages proved by Arundel Valley in the warranty lawsuit;

b. enter a judgment declaring that Arundel Valley is bound by the declarations issued by the Court in this case; and

c. grant such other and further relief as the Court deems appropriate.

GEMINI INSURANCE COMPANY,
By its attorneys,


 /s/ Michael Hayden
Michael Hayden, Esq.
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA  02210
(617) 439-7500
mhayden@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

      I, Lawrence M. Slotnick, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

| | |
|---|---|
| Edward F. Vena, Esq. | Timothy J. Bryant, Esq. |
| Law Offices of Edward Vena | Preti Flaherty |
| 100 Franklin Street, 7th Floor | One City Center |
| Boston, MA  02108 | Portland, ME 04101 |
| 617-951-2400 | 207-791-3000 |
| | tbryant@preti.com |

        _/s/ Michael Hayden_____
        Michael Hayden, Esq.


        Dated: _____

MM #:10051348

# Exhibit 1

# Gemini Insurance Policy